## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., | |
| Plaintiff, | Civil Action No. 2:16-cv-00055-JRG-RSP |
| v. | |
| T-MOBILE US, INC. AND T-MOBILE USA, INC., | Jury Trial Demanded |
| Defendants, | |
| NOKIA SOLUTIONS AND NETWORKS US LLC AND NOKIA SOLUTIONS AND NETWORKS OY, | |
| TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC., | |
| Intervenors. | |

## T-MOBILE AND INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INELIGIBILITY OF U.S. PATENT NOS. 8,798,575 AND 8,531,971

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................... 1

II. The Asserted '575 and '971 Patent Claims Are Directed to an Abstract Idea ................... 1

III. Huawei Fails to Articulate Any Inventive Concept Embodied in the Asserted '575 and '971 Patent Claims ........................................................................................................... 3

IV. Conclusion ........................................................................................................... 4

## I.      INTRODUCTION

The asserted claims of the '575 and '971 patents recite the abstract idea of determining how to charge a customer for use of a service, and do not supply any inventive concept to render that idea patent-eligible under 35 U.S.C. § 101.  Huawei's argument that the claims are not directed to methods of charging customers is inconsistent with the plain language of the claims, the specification, and Huawei's own opposition.  Huawei also fails to respond to T-Mobile's showing that the claims merely use functional language to describe the same types of conventional elements performing the same types of conventional functions as conventional flow based charging systems. Nor does Huawei articulate any inventive concept purportedly embodied in the claims.

## II.     THE ASSERTED '575 AND '971 PATENT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA

Huawei's contention that the asserted claims "are not directed to 'the abstract idea of determining how to charge (*i.e.*, bill) a customer for the usage of a service'" (Opp'n at 1), is belied by even a cursory examination of the '575 and '971 patents, as well as of Huawei's own opposition, which repeatedly confirm that the alleged inventions are directed entirely to methods for determining how to charge a customer for service usage.  *See, e.g.*, *id.* at 3 ("Claim 1 recites 'a [CRF] *determining a charging method* and charging rules in response to a service request or other trigger event' and then having the 'CRF provid[e] a [TPF] with the *charging rules* and address information of a charging system'");[1] *id.* at 5 ("The improvement described and claimed in the '971 patent relates to empowering the CRF with the ability to dynamically provision *new charging rules* based on 'event triggers' . . . "); *id.* ("[T]he CRF is able to flexibly set event triggers according to the *charging-relevant* input information . . . ").  Although the patents may contemplate related "policy" and "control" rules (*see id.* at 7), those rules are inextricably intertwined with how users

---

[1]  Emphases added unless otherwise noted.

are charged for cellular data service—for example, policies regarding what happens if a user's data usage exceeds the amount paid for.  Even the example given by Huawei of how the claims "are not merely how much a customer is billed" refers to "charging rules . . . such as [a] ***lower charging rate***."  *Id.* at 4.  Huawei's contention that the claims do not relate to determining how to charge a customer for usage of a service simply is not credible.

Therefore, the claims of the '575 and '971 patents, at their core, are directed to a simple variation on the fundamental economic practice of determining how to charge a customer for a service.  Significantly, Huawei does not attempt to distinguish or otherwise engage with the many cases from the Supreme Court, Federal Circuit, and this Court holding that claims directed to fundamental economic practices are abstract ideas.  *See* Mot. at 8-9.  Nor does Huawei attempt to refute T-Mobile's showing that the claims of the '971 patent are directed to the doubly abstract idea of using event triggers—*i.e.*, performing a task upon the occurrence of an event—to determine how to charge a customer for usage of a service.  Mot. at 10-11.  As a result, Huawei has failed to rebut T-Mobile's showing that the asserted claims are abstract.

Huawei further argues in the alternative that, assuming the asserted claims are directed to determining how to charge a customer for usage of a service, the claims nonetheless are not abstract because they are "drawn specifically to the 'process or machinery' . . . used to accomplish the provisioning of charging rules."  Opp'n at 8 (quoting *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)).  But as T-Mobile explained in it motion, the asserted claims use entirely functional language devoid of any technical explanation as to ***how*** this provisioning of charging occurs—other than that it involves a conventional CRF and TPF sending unspecified messages to each other regarding charging rules.[2]  Mot. at 13.  Thus, the claimed

---

[2]  Given their functional language, the claims attempt to preempt a broad swath of the 3GPP standard implementation of flow based charging, an implementation that Huawei did not invent

method may be performed by conventional CRF and TPF modules running on generic computers capable of determining rules and transmitting messages regarding those rules.  *See id.*

Lastly, Huawei argues that the claims are not abstract because "[t]here is no analog to a CRF or TPF outside the context of the specific 3GPP standard-compliant cellular communication networks" at issue here.  Opp'n at 9-10.  But Huawei's assertion is demonstrably incorrect.  T-Mobile explained in its motion that the claimed functionality of the CRF and TPF reflect "the longstanding practice of a phone company determining, for example, whether to charge a customer for pre-paid minutes or based on minutes used ('charging method'), and how to charge a customer based on local or long-distance rates ('charging rules')," and "providing charging rules and information about the relevant charging system to its Billing Department."  Mot. at 6.

## III.   HUAWEI FAILS TO ARTICULATE ANY INVENTIVE CONCEPT EMBODIED IN THE ASSERTED '575 AND '971 PATENT CLAIMS

T-Mobile explained in detail in its motion that the asserted claims recite the same types of conventional elements performing the same types of conventional functions as the known prior art flow based system, and thus fail to supply an inventive concept.  T-Mobile also explained that the claims involve basic data-gathering and communication steps that the Supreme Court, Federal Circuit, and this Court have consistently determined add nothing to an abstract idea.  Mot. at 1, 8-10, 12-15.  Huawei never disputes this showing.  In fact, the "Second Prong" section of Huawei's brief does not mention an "inventive concept" at all.  Instead, Huawei relies on only one case, *Core Wireless*, for its entire argument under the second prong of the *Alice/Mayo* test.

Huawei touts the purported "technically specific subject matter of the claims" and asserts that the claims are "founded on subject matter specific to a 3GPP standard-compliant network."

---

and that is far broader than anything the patents even claim to have contributed.  In any event, "the absence of complete preemption does not demonstrate patent eligibility."  *Ariosa Diagnostics Inc. v. Sequenom Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015).

Opp'n at 11-12.  But "[t]he Supreme Court and [the Federal Circuit] have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) (citations omitted); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (holding that the fact that claims relating to dynamically managing extensible markup language (XML) documents were limited to "XML documents in particular" does "not make an abstract concept any less abstract").  Huawei's argument that the claims are limited to a specific 3GPP technical environment is insufficient to overcome this binding precedent.

Huawei also argues that the '575 and '971 patents are not directed to a generic computer or other non-specific machine elements, but rather "specific, concrete machine[s]."  Opp'n at 11-12.  The CRF and TPF are functional modules that were specifically described in the Release 6 3GPP standards—and thus were well-known before the asserted patents—but which run on *unspecified computers or equipment*.  The claims do not purport to rely on CRFs or TPFs other than the type described by the *preexisting Release 6 3GPP standards*, nor do the asserted claims require that any steps be performed beyond the basic exchange of information using generic, unspecific data transmission methods.  *See* Mot. at 9, 12-14.  And contrary to Huawei's opposition (Opp'n, at 13), functional limitations like "determining charging rules" and "receiving a charging rule" make perfect sense outside the context of a 3GPP standard-compliant network.  *See* Mot. at 6.  These routine and basic limitations fall far short of transforming the nature of the claims into a patent-eligible application of the abstract idea.

## IV.    CONCLUSION

For the reasons herein and those in the opening motion, T-Mobile requests that the Court enter summary judgment that the asserted claims of the '575 and '971 patents are patent-ineligible.

Dated: August 15, 2017

By: _/s/ Y. Ernest Hsin_

Mark D. Selwyn
(California Bar No. 244180)
Kathryn D. Zalewski (California Bar No. 263119)
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6000

Joseph J. Mueller
(Massachusetts Bar No. 647567)
Cynthia Vreeland
(Texas Bar No. 20625150
Massachusetts Bar No. 635143)
**WILMER CUTLER PICKERING
 HALE AND DORR LLP**
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

Josh A. Krevitt (New York Bar No. 2568228)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue, 47th Floor
New York, New York 10166
Tel: (212) 351-4000
Fax:  (212) 351-4035

Mark N. Reiter (Texas Bar No. 16759900)
**GIBSON, DUNN & CRUTCHER LLP**
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Tel: (214) 698-3100
Fax: (214) 571-2900

Ernest Y. Hsin (California Bar No. 201668)
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Tel: (415) 393-8224
Fax: (415) 374-8436

Stuart M. Rosenberg (California Bar No. 239926)
**GIBSON, DUNN & CRUTCHER LLP**

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel: (650) 849-5389
Fax: (650) 849-5089

Michael E. Jones (Texas Bar No. 10929400)
Email: mikejones@potterminton.com
E. Glenn Thames, Jr. (Texas Bar No. 00785097)
Email: glennthames@potterminton.com
**POTTER MINTON, PC**
110 North College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Counsel for Defendants T-Mobile US,*
*Inc. and T-Mobile USA, Inc.*


/s/ John D. Haynes_____
John D. Haynes (Georgia Bar No. 340599)
Patrick J. Flinn (Georgia Bar No. 264540)
Michael C. Deane (GA Bar No. 498195)
**ALSTON & BIRD LLP**
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777
Email: John.Haynes@alston.com
Email: Patrick.Flinn@alston.com
Email: Michael.Deane@alston.com

Michael J. Newton (TX Bar No. 24003844)
**ALSTON & BIRD LLP**
2800 N. Harwood St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: Mike.Newton@alston.com
Email: Derek.Neilson@alston.com

M. Scott Stevens (North Carolina Bar No. 37828)
Ross R. Barton (North Carolina Bar No. 37179)
**ALSTON & BIRD LLP**
Bank of America Plaza

6

101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Email: Scott.Stevens@alston.com
Email: Ross.Barton@alston.com

Deron R. Dacus (Texas State Bar No. 790553)
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite
430 Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543

*Counsel for Intervenors Nokia Solutions
and Networks US LLC and Nokia Solutions
and Networks Oy*


/s/ Phillip B. Philbin
Phillip B. Philbin
LEAD ATTORNEY
State Bar No. 15909020
Jamie H. McDole
State Bar No. 24082049
Charles M. Jones II
State Bar No. 24054941
Michael D. Karson
State Bar No. 24090198
Matthew P. Chiarizio
State Bar No. 24087294
Tiffany M. Cooke
State Bar No. 24087340
**HAYNES AND BOONE, LLP**
2323 Victory Avenue
Suite 700
Dallas, Texas 75219
Tel.: (214) 651-5000
Fax: (214) 651-5940
Email: phillip.philbin@haynesboone.com
jamie.mcdole@haynesboone.com
charlie.jones@haynesboone.com
michael.karson@haynesboone.com
matthew.chiarizio@haynesboone.com
tiffany.cooke@haynesboone.com

7

Jason T. Lao
California State Bar No. 288161
**HAYNES AND BOONE, LLP**
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Tel.: (949) 202-3051
Fax: (949) 202-3151
Email: jason.lao@haynesboone.com

*Counsel for Intervenors*
*Telefonaktiebolaget LM Ericsson and*
*Ericsson Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has

been served on August 15, 2017, by electronic mail upon all counsel of record who are deemed

to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-

5(a)(3).

*/s/ Y. Ernest Hsin*
Y. Ernest Hsin

8