# ATTACHMENT 1



**J. Mark Mann**
Partner
Board Certified: Personal Injury Trial Law
Texas Board of Legal Specialization
National Board of Trial Advocacy (1992-2012)
Fellow - American College of Trial Lawyers

300 W. Main Street
Henderson, Texas 75652
Telephone: 903.657.8540
Fax: 903.657.6003
Mark@TheMannFirm.com

August 21, 2017

*Via CM/ECF Filing*
Honorable Roy S. Payne
United States Magistrate Judge
Sam B. Hall, Jr. Federal Building
   And United States Courthouse
100 East Houston Street
Marshall, TX 75670

      Re:    *Civil Actions; 2:16-cv-52, 2:16-cv-55, 2:16-cv-56 and 2:16-cv-57; Huawei Technologies Co. Ltd. v. T-Mobile US, Inc. et al; In the United States District Court, Eastern District of Texas, Marshall Division.*

Dear Judge Payne:

Huawei Technologies Co. Ltd ("Huawei") respectfully submits this letter regarding trial management and scheduling of the four above-captioned cases in response to the letter of August 18, 2017 submitted by T-Mobile and the Intervenors.

The above-captioned four cases are scheduled for jury selection on October 2, 2017. Under the Court's general practice when multiple cases are docketed for jury selection on the same day, the Court would typically proceed with the lowest numbered case on the docket (16-cv-0052), complete trial in that case, and then proceed sequentially through the remaining cases on the docket, completing each trial in turn. It is counsel's understanding that of all of the cases currently set for jury selection on October 2, 2017, the four above-captioned cases each hold lower case numbers than any of the cases unrelated to the parties in this matter. For the reasons explained in more detail below, Huawei respectfully requests that in proceeding sequentially through the four cases, the Court also set individual trial dates as early as practicable in order to accommodate witnesses who must travel from to the U.S. from overseas and obtain certain visas required for that travel.

Tyler, Texas
903.596.0900

Henderson, Texas

Marshall, Texas
903.472.4294

www.MT2LawGroup.com

August 21, 2017
P a g e | **2**

Huawei recognizes that the Court has a very busy trial docket and requests that trial be scheduled as expeditiously as the Court's schedule permits, ideally completing all four trials before the end of 2017.  Huawei further notes three additional scheduling considerations, each of which supports Huawei's proposal for a sequence of four trials in as short a time period as the Court can accommodate.

First, these four actions represent just a small portion of Huawei's standards-essential patent portfolio relevant to T-Mobile's LTE network operations.  As such, the damages sought by Huawei in any one case are quite modest.  And, regardless of the outcome, the resolution of just a single case does not provide T-Mobile with the full patent rights it needs to operate its LTE network.  Thus, trial of just the first case is less likely to resolve matters between the parties than it might in a case with a different factual underpinning.

Second, five months after Huawei filed its four Complaints against T-Mobile in January, 2017, Nokia filed both an Answer in Intervention and its own Counterclaims for patent infringement against Huawei.  The Court found that Nokia's counterclaims were not sufficiently related to the above captioned cases and ordered them severed into four separate cases, numbered 16-cv-00753 through 756.  *See e.g*. 16-cv-00052 D.I. 54.  Since Nokia's claims in those cases were filed five months after Huawei's were filed, Huawei submits that its four cases should all proceed through completion of trial prior to any of the Nokia cases proceeding to trial.

Finally, Huawei's separate action for declaratory relief regarding its FRAND offer on its full LTE portfolio (16-cv-0715) is currently stayed pending the resolution of the above four captioned cases.  *See e.g*. 16-cv-00715 D.I. 43.  Thus, the longer it takes to complete trial of the four patent infringement cases, the longer Huawei must wait to pursue its requested declaratory relief.  Indeed, it is Huawei's view that mediation is more likely to be successful, the sooner the parties can resolve the question of whether Huawei's April 2016 license offer did or did not comply with FRAND – something that none of the individual patent actions will (or can) address.

T-Mobile and Intervenors have requested that the Court set mediation to occur after the first trial and that no dates be set at the present time for the remaining three trials.  While Huawei is amenable to mediation at any time set by the Court, Huawei requests that firm dates be set for all four trials, even if a *short* time period is provided for a mediation between the first and second trials.  Significantly, the parties have already conducted a mediation in this matter, and it was unsuccessful despite the use of the one of most experienced mediators for patent matters in the country.  Huawei believes that mediation after the first trial need not delay any proceedings and that having specific trial dates for the second, third and fourth trials will make any such mediation more productive rather than less so.

August 21, 2017
P a g e | **3**

## I. Background

T-Mobile's August 18, 2017 letter does not accurately describe the status of the four patents that may ultimately be dismissed from these four actions.
T-Mobile states that after claim construction Huawei indicated it would drop two of the asserted patents. This is a reference to the '677 and '779 patents in 16-cv-00056. T-Mobile is partially correct. Huawei has provided T-Mobile with a covenant not to sue regarding those patents and a proposed form of stipulation regarding the dismissal of all claims related to those two patents. While Huawei and T-Mobile are in agreement regarding dismissal of the patent infringement claims and declaratory relief counterclaims directed to the '677 and '779 patents, the parties have not reached agreement yet on the appropriate disposition of T-Mobile's other counterclaims which are based in part on those two patents.

T-Mobile also states that, after the close of expert discovery, Huawei indicated that it would drop two more asserted patents. This is not an accurate description of either the proposal or the current status of discussions regarding these patents. With respect to the '617 and '365 patents in 16-cv-00052, after the close of expert discovery, Huawei proposed that it would dismiss those patents <u>if</u> T-Mobile made binding commitments that it will not implement the accused functionality in its production network during the remaining life of the patents. As part of the proposal, Huawei conditioned such dismissal on T-Mobile providing an annual affidavit from a business person of sufficient authority confirming that T-Mobile was continuing to honor this commitment. T-Mobile has been unwilling to accept these terms, as of the date of this letter, and thus these patents currently remain in the litigation.

## II. The Parties Respective Proposals

This Court has extensive experience with large, complex, disputes that span multiple cases. These four cases are no different than many which have proceeded through trial expeditiously in this Court. For that reason, Huawei respectfully submits that trial scheduling should begin with the concept that these cases will proceed in sequence, and move through trials as expeditiously as practical given the Court's schedule. Huawei is willing to mediate at any time – including in between trials – and views mediation as something that will be more effective after a first trial if there are firm dates in place for the next trial, to take place as shortly after the mediation as the Court's permits.

In addition, practical considerations support Huawei's request for firm dates for each of the four trials. Huawei anticipates bringing several witnesses from China to testify in person in each of the four cases. Those witnesses require US Visas to be able to make that trip, and may require a visa renewal depending on the particular trial date of the individual trial in which they will be testifying. Counsel is informed that the current processing time for U.S. Visa applications have become slower, and that it is the common practice of the

August 21, 2017
P a g e | **4**

US consulates in China to take possession of the applicants' existing Visas when they apply for renewal. This leaves certain witnesses with a potential Catch-22. If the trial of the individual case in which they are testifying occurs prior to expiration, they can travel on their existing Visa; however, if the trial is later then they will require a renewal. But if they apply for a renewal now, and then the trial occurs too early, they could be without any Visa while they wait for the renewal application to be processed. In light of that practical dilemma, Huawei respectfully requests that the Court set particular trial dates for each case so that the witnesses can make plans accordingly and either seek renewal of their Visas now or wait to seek renewals until after trial.

Defendants and Intervenors, on the other hand, intend to delay the second and subsequent trials indefinitely. This is evident in T-Mobile's letter – which suggests that the possibility of post-trial motions "which often take 60 days or more" requires the trials to be deferred to some unknown date. T-Mobile cites damages as an example of a post-trial motion which warrants pushing off subsequent trials indefinitely. Not only is this entirely speculative, T-Mobile has already taken its shot at Huawei's damages theory through the pending Daubert motion regarding Huawei's expert Dr. Vander Veen. If that motion is denied, as Huawei believes it should be for all the reasons in its briefing, there is little likelihood that a post-trial motion regarding the same damages theory will come out any differently.

Any post-trial motions should be presented in their normal course even as the next case proceeds to trial. For example, if Huawei prevails at trial in each case, it intends to seek either an injunction or, in the alternative, a going-forward royalty, pursuant to 35 U.S.C. Section 283. Since the issues presented in the injunction proceeding, including the *eBay* factors, will be specific to the particular patents found infringed, there is no reason to delay the subsequent trials while the Court adjudicates Huawei's motion for injunction or going-forward royalty.

The cases referenced in T-Mobile's letter do not suggest a different result. The *Core Wireless* case was unique to its own facts and posture, including a change in counsel after the first trial, thus delaying the subsequent trial. The Harman litigation was a Qui Tam matter, and the first case involved a mistrial and writ of mandamus, and thus bears little relationship to the above captioned four cases.

Most fundamentally, T-Mobile and Intervenor's proposal has a deep and fundamental flaw. They propose mediation after the first trial while trial dates for remaining cases remain in limbo. The practice of this Court is that mediations typically occur when cases do have firm and fixed trial dates in place – and for good reason – experienced litigators and mediators recognize that mediations are far more effective when all parties know with certainty that a failed mediation is followed in short order by a trial. This is especially the case in the present litigations, because, as discussed above, each individual case tests only a tiny portion of Huawei's standards-essential LTE patent portfolio. Unlike a more typical

August 21, 2017
P a g e | **5**

dispute, the damages from any one case are less likely to drive mediation, and resolution of just a single case cannot provide T-Mobile for the patent rights it requires to operate an LTE network in the U.S.

### III.    Conclusion

Huawei's proposal comports with this Court's most common practice, and is most likely to lead to resolution of all four cases in the shortest time period.  It also preserves the separation in time between the four above-captioned cases and the four severed cases filed by Nokia some five months after Huawei's Complaints were filed.   T-Mobile and Intervenors' proposal promises to extend multiple trials over many months, or perhaps even a full a year, and reduces the likelihood that a mediation after the first trial will be successful.

          Respectfully submitted,

By:     */s/ J. Mark Mann*
**J. Mark Mann**
State Bar No. 12926150
mark@themannfirm.com
**G. Blake Thompson**
State Bar No. 24042033
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Ruffin Cordell
Texas Bar No. 04820550
cordell@fr.com
Richard A. Sterba
DC Bar No. 461417
sterba@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

August 21, 2017
P a g e | **6**

    Thomas H. Reger II
    Texas Bar No. 24032992
    reger@fr.com
    Carl E. Bruce
    Texas Bar No. 24036278
    bruce@fr.com
    David B. Conrad
    Texas Bar No. 24049042
    conrad@fr.com
    Jane Du
    Texas Bar No. 24076355
    du@fr.com
    **FISH & RICHARDSON P.C.**
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    Telephone: (214) 747-5070
    Facsimile: (214) 747-2091

    David Barkan
    California Bar No. 160825
    barkan@fr.com
    **FISH & RICHARDSON P.C**.
    500 Arguello Street, Suite 500
    Redwood City, CA 94063
    Telephone: (650) 839-5070
    Facsimile: (650) 839-5071

    Kevin Su
    Massachusetts Bar No. 663726
    su@fr.com
    **FISH & RICHARDSON P.C.**
    One Marina Park Drive
    Boston, MA 02210
    Telephone: (617) 542-5070
    Facsimile: (617) 542-8906

    **ATTORNEYS FOR PLAINTIFF**
    **HUAWEI TECHNOLOGIES CO. LTD.**